

October 2, 2025

**Via ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *Quantum BioPharma Ltd. v. CIBC World Markets, Inc. et al.*, No. 1:24-cv-07972

Dear Judge Ramos:

Pursuant to Item I.A of Your Honor's Individual Practices, we write in response to Defendants' letter dated September 29, 2025. Dkt. No. 44. In their letter, Defendants claim that Judge Ho's recent decision in *Phunware, Inc. v. UBS Securities LLC*, 2025 WL 2636568 (S.D.N.Y. Sept. 12, 2025) ("*Phunware III*"), "further supports dismissal." Defendants are incorrect.

*Phunware III* addressed UBS's motion to dismiss (i) "any claims arising from a 'long-term price impact theory,' for failure to adequately allege the loss causation element of a securities fraud claim," and (ii) "any claims related to an alleged spoofing episode occurring on February 11, 2021." 2025 WL 2636568, at *3. The court granted UBS's motion with respect to the first argument but denied it with respect to the second argument. In doing so, the court confirmed that Quantum's allegations here are sufficient to plead market manipulation.

Specifically, in the part of the *Phunware III* that Defendants ignore, the court found that plaintiff's allegations regarding the February 11, 2021, spoofing episode were sufficient because they "generally follow the same standard three-step spoofing pattern that this Court has found sufficient with respect to other alleged spoofing episodes: (1) a large volume of orders by UBS that were allegedly baiting orders; (2) a subsequent period of decline in Phunware share prices, during which UBS executed other trades; and (3) cancellation of the initial baiting orders." *Id.* at *5 (internal citations omitted). Quantum's allegations likewise follow that pattern. Quantum alleges—repeatedly—that Defendants placed large volumes of baiting orders, that those baiting orders caused the price of Quantum's stock to fall, that Defendants proceeded to purchase Quantum stock at those deflated prices, and that Defendants then cancelled the baiting orders. Dkt. No. 32 ¶¶ 55 (summarizing three-step process), 58 (describing baiting orders), 65–67 (describing impact of baiting orders, placement of purchase orders, and cancellation of baiting orders), 69 (summary of baiting orders, purchase volume, and price decline), 97–197 (specific examples).

To be sure, as Defendants emphasize, the court in *Phunware III* accepted UBS's arguments regarding the plaintiff's long-term price impact theory. 2025 WL 2636568, at *4. In particular, relying on *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2025 WL 934319, at *16

The Honorable Edgardo Ramos
October 2, 2025
Page 2 of 3

(S.D.N.Y. Mar. 26, 2025), the court found that the plaintiff's "60-day chart purporting to show a decline in the price of Phunware stock relative to Nasdaq indexes after a spoofing episode" does "not suffice to plausibly allege that Defendants' spoofing *caused* a long-term decline in the price of Phunware's stock." 2025 WL 2636568, at *4 (emphasis in original) (alterations omitted). But *Phunware III*, like *Northwest Biotherapeutics*, is distinguishable in this respect.

Indeed, in both *Northwest Biotherapeutics* and *Phunware III*, the price of the relevant security was steadily declining at the time the average spoofing episode began. *See* Am. Compl. ¶ 124, *Phunware, Inc. v. UBS Securities LLC*, No. 1:23-cv-6426 (S.D.N.Y. Dec. 2, 2024), Dkt. No. 35 (chart indicating that price continuously declined for at least ten minutes prior to spoofing episode); SAC ¶ 311, *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185 (S.D.N.Y. Mar. 18, 2024), Dkt. No. 150 (same). Accordingly, the fact that the price continued to decline after the spoofing episode began, did not speak to whether the spoofing episode *caused* the decline. *See Nw. Biotherapeutics*, 2025 WL 934319, at *15 ("The 60-day chart, especially when considered together with the 400-minute chart, merely alleges that the average Spoofing Episode took place while NWBO's stock price was already falling."). Here, in contrast, the price of Quantum stock was *not* unambiguously or steadily declining at the time the average spoofing episode began. Dkt. No. 32 ¶ 203 (indicating that price was fluctuating up and down prior to spoofing episode). As a result, as Judge Stanton observed in *Mullen Automotive, Inc. v. IMC Financial Markets*, "[w]hether these spoofing events actually had a long-term price impact is a factual question better left for later stages of litigation." 2025 WL 951501, at *6 (S.D.N.Y. Mar. 28, 2025).

In short, *Phunware III* does not support dismissal in any respect, and Defendants' motion should be denied.

Thank you for your consideration.

Respectfully submitted,

/s/ *Velvel (Devin) Freedman*
Velvel (Devin) Freedman
Kyle Roche
Stephen Lagos
FREEDMAN NORMAND FRIEDLAND LLP
155 E. 44th Street, Suite 915
New York, NY 10017
Tel.: (646) 494-2900
vel@fnf.law
kroche@fnf.law
slagos@fnf.law

James Wes Christian
CHRISTIAN ATTAR LAW GROUP, LLC

The Honorable Edgardo Ramos
October 2, 2025
Page 3 of 3

        1177 West Loop South, Suite 1700
        Houston, TX 77027
        Tel.: (713) 659-7617
        jchristian@christianattarlaw.com

        *Counsel for Plaintiff*

cc:    Counsel of Record (by ECF)