UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL J. DURKACZ, *individually and on behalf of all others similarly situated*,

Plaintiff,

*– against –*

CIBC WORLD MARKETS, INC., CIBC WORLD MARKETS CORP., THE CANADIAN IMPERIAL BANK OF COMMERCE, RBC DOMINION SECURITIES, INC., RBC CAPITAL MARKETS, LLC, *and* ROYAL BANK OF CANADA,

Defendants.

**OPINION & ORDER**

25-cv-10565 (ER)

RAMOS, D.J.:

Paul J. Durkacz brought a class action against CIBC World Markets, Inc., CIBC World Markets Corp., RBC Dominion Securities, Inc., RBC Capital Markets, LLC, the Canadian Imperial Bank of Commerce, and the Royal Bank of Canada (collectively "Defendants") on December 19, 2025. Durkacz alleges that Defendants participated in a scheme to manipulate the trading and market price of Quantum Biopharma Ltd ("Quantum") stock. Durkacz asserts claims under Sections 9, 10(b), and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5, on behalf of a class of people who sold Quantum securities at artificially low prices between January 6, 2021 and October 15, 2025.

Over a year prior to the initiation of Durkacz' class action, on October 20, 2024, Quantum brought a similar action against two of the same defendants—CIBC World Markets, Inc. and RBC Dominion Securities, Inc.—as well as unknown entities that allegedly took part in the scheme.

Before the Court is Quantum's motion for consolidation, appointment as lead plaintiff, and approval of lead counsel. Durkacz Doc. 32.[1] Defendants oppose the motions. For the reasons stated below, Quantum's motion for consolidation is GRANTED, motion for appointment as lead plaintiff is DENIED, and motion for appointment of lead counsel is GRANTED in part.

## I. BACKGROUND

### A. Factual Background[2]

Quantum is a biopharmaceutical company founded in 1994. Durkacz ¶¶ 1, 22. Quantum's business includes a portfolio of biotechnology and therapeutic solutions for the treatment of neurodegenerative, metabolic, and alcohol misuse disorders. Durkacz ¶ 22. Quantum has been publicly traded since May 2018. Durkacz ¶ 23. Quantum's shares have been listed on the Nasdaq and Canadian Securities Exchange ("CSE"). *See id.*

CIBC World Markets, Inc. ("CIBC World Markets"), CIBC World Markets Corp. ("CIBC USA"), RBC Dominion Securities, Inc. ("RBC Securities"), RBC Capital Markets, LLC ("RBC Capital Markets") (together, "Broker-Dealer Defendants") are registered broker-dealers. Durkacz ¶¶ 9–12.

CIBC World Markets and RBC Securities are Canadian corporations that primarily execute securities transactions for customers in Canada, including on the CSE, and route orders to intermediary broker-dealers in the U.S. Durkacz ¶¶ 9, 11.

CIBC USA and RBC Capital Markets are based in the U.S., registered with the SEC, and operate brokerages for CIBC World Markets and RBC Securities, respectively,

---

[1] Case No. 25-cv-10565 is referred to as the "Durkacz Action." The Durkacz Action's documents are referred to as "Durkacz Doc. _." Case No. 24-cv-7972 is referred to as the "Quantum Action." The Quantum Action's documents are referred to as "Quantum Doc. _." Together, the Durkacz Action and the Quantum Action are referred to as the "Actions."

[2] The facts are based on the allegations set forth in the Durkacz Action Complaint, Durkacz Doc. 1, herein referred to as "Durkacz ¶ ", and the Quantum Action's Amended Complaint, Quantum Doc. 32, herein referred to as "Quantum ¶_."

to execute trades on U.S. exchanges. Durkacz ¶¶ 10, 12. The Canadian Imperial Bank of Commerce ("CIBC") owns CIBC USA, and the Royal Bank of Canada ("RBC") owns RBC Capital Markets. *Id.*

CIBC and RBC (together, "Control Person Defendants") are chartered banks headquartered in Toronto, Canada. Durkacz ¶¶ 14–15. They both exercise control—including supervising the securities and order-routing activities—over the compliance and trading operations of their subsidiaries, CIBC USA and RBC Capital Markets, respectively. *Id.*

Durkacz is a shareholder of Quantum who sold Quantum securities between January 6, 2021 and October 15, 2025 (the "Durkacz Class Period"). Durkacz ¶¶ 8, 122.

Both Durkacz and Quantum allege that Defendants engaged in a fraudulent "spoofing" scheme in which they "repeatedly, and on a massive scale, placed and executed manipulative trades that were designed to, and did, artificially deflate the price of Quantum stock" which "enriched Defendants while devastating public investors like" Durkacz. Durkacz ¶ 1. A spoofing scheme is designed to make it appear as though there is a genuine buying or selling pressure, when really, the pressure is artificial.[3] Durkacz ¶ 44–45. Durkacz and Quantum allege that Defendants engaged in spoofing by first, expressing their intention to sell by placing many "baiting orders," or fictitious trades they never intend to execute; second, nearly simultaneously entering purchase orders to buy the shares at artificially depressed prices, influenced by the false impression of a pressure to sell; and third, completing the purchase orders and canceling all remaining baiting orders. Durkacz ¶¶ 62, 64. Durkacz and Quantum allege that Defendants engaged in this practice in rapid succession, sometimes dozens of times in a day. Durkacz ¶¶ 63, 112. Durkacz alleges that Defendants placed fictitious baiting orders involving at least 11,967,000 shares of Quantum stock on Canadian stock exchanges and

[3] While Durkacz details how spoofing can be used to either artificially increase or decrease a security's price, Durkacz ¶ 46, the scheme alleged here is that of artificially decreasing the price, *see* Durkacz ¶ 61.

2,293,191 shares on U.S. exchanges. Durkacz ¶ 65. Durkacz states that during the Durkacz Class Period, Quantum sold more than 16 million shares via at-the-market offerings for a profit of over $47 million. Durkacz Doc. 33 at 11. Quantum states that during a period earlier than the Durkacz Class Period, from January 1, 2020 through August 15, 2024 (the "Quantum Relevant Period"), it sold approximately 90 million shares of its own stock, many at at-the-market prices. Quantum ¶¶ 1, 208.

### B. Procedural Background

Quantum filed its complaint on October 20, 2024, seeking damages for violations of Sections 9 and 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 10b-5, and common law fraud. Quantum Doc. 1. Quantum alleged that CIBC World Markets, RBC Securities, and other unknown entities unlawfully participated in the spoofing scheme to manipulate the trading and market price of Quantum during the Quantum Relevant Period. *Id.* at 4. On May 1, 2025, Quantum filed an amended complaint, alleging violations of the same laws.[4] Quantum Doc. 32. On June 16, 2025, CIBC World Markets and RBC Securities filed a joint motion to dismiss the amended complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Quantum Doc. 35. They argued that Quantum did not plausibly allege that they placed any particular order, and that the case should be dismissed for at least five independent reasons: (1) the facts and circumstances of the case were "overwhelmingly foreign," so this Court could not reach them through personal jurisdiction, extraterritoriality, or *forum non conveniens*; (2) Quantum did not adequately allege that they engaged in manipulation in violation of the Exchange Act; (3) Quantum did not plead a strong inference of scienter; (4) Quantum did not plead loss causation; and (5) Quantum's Exchange Act claims were time-barred. Quantum Doc. 36 at 9–13. On

[4] On January 31, 2025, CIBC World Markets and RBC Securities jointly filed a motion to dismiss the complaint. Quantum Doc. 27. As Quantum filed the Amended Complaint on May 1, the original complaint was no longer the operative pleading, so the Court issued an order terminating the original motion to dismiss as moot. Quantum Doc. 34.

March 30, 2026, the Court granted the motion in part and denied in part. Quantum Doc. 46 at 41. The Court declined to dismiss the Quantum Action on jurisdictional or time-barred grounds, and declined to dismiss the Exchange Act claims. *Id.* at 20, 27. However, the Court found that Quantum's common law fraud claims were not sufficiently pleaded, and Quantum was granted leave to amend. *Id.* at 40–41.

On December 19, 2025, about a year after the Quantum Action was filed but before the motion to dismiss in the Quantum Action was decided, Durkacz filed a class action against Defendants. Durkacz Doc. 1. Similar to the Quantum Action, Durkacz alleges violations of Sections 9 and 10(b) of the Exchange Act and SEC Rule 10b-5, but also violations of Section 20(a) of the Exchange Act. Durkacz ¶¶ 9, 11, 17. Durkacz did not bring common law fraud claims like those that were dismissed in the Quantum Action. *See id.*

As required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(A), Durkacz' counsel published notice of the case over *Business Wire* on December 23, 2025, announcing that a securities class action had been filed against Defendants, and advising Quantum shareholders that they had until February 23, 2026 to file a motion for appointment as lead plaintiff. *See* Durkacz Doc. 33-4 at 2–3.

On February 23, 2026, Quantum filed the instant motion in response to the notice in the Durkacz Action. Durkacz Doc. 32. No other party filed a motion for appointment as lead plaintiff. Quantum's motion seeks consolidation of the Durkacz and Quantum Actions, appointment as lead plaintiff, and approval of Quantum's selected counsel as lead counsel. *Id.* Freedman Normand Friedland LLP is counsel for Quantum, and Grant & Eisenhofer P.A. is counsel for Quantum and Durkacz. *Id.* at 2–3; Durkacz Doc. 1 at 47. Defendants filed an opposition on March 9, 2026. Durkacz Doc. 37. Quantum responded on March 16, 2026. Durkacz Doc. 39. On June 23, 2026, Defendants filed a notice of supplemental authority, *Genius Group Ltd. v. Citadel Securities LLC*, No. 25 Civ. 9546 (VEC), 2026 WL 1760342 (S.D.N.Y. June 18, 2026), in which a corporate

entity also sought to be appointed lead plaintiff in a class action affecting its stock, and was denied. Durkacz Doc. 42. Quantum responded on June 25, 2026. Durkacz Doc. 43.

## II. LEGAL STANDARDS

### A. Motion to Consolidate

Before ruling on the appointment of lead plaintiff and approval of lead counsel, the Court must first decide whether the Durkacz and Quantum Actions are "substantially the same" and accordingly, should be consolidated. *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not [appoint a lead plaintiff] *until after* the decision on the motion to consolidate is rendered." (emphasis added)).

"Rule 42(a) empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." *Katz v. Marex Group PLC*, 818 F. Supp. 3d 591, 601 (S.D.N.Y. 2026) (internal quotations and citations omitted). The Court "has broad discretion to determine whether consolidation is appropriate." *Hom v. Vale, S.A.*, No. 15 Civ. 9539 (GHW), 2016 WL 880201, at *2 (S.D.N.Y. Mar. 7, 2016) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)). "Differences in causes of action [or] defendants . . . do not render consolidation inappropriate where (1) the cases present sufficiently common questions of fact and law, and (2) the differences do not outweigh the interests of judicial economy served by consolidation." *Katz*, 818 F. Supp. 3d at 601 (alteration in original) (internal quotations and citations omitted). "A party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions." *Id.* (internal quotations and citations omitted). "[M]ultiple cases consolidated under [Rule 42(a)] retain[] independent character . . . ." *Abbott Laboratories v. Feinberg*, No. 21-45, 2023 WL 19076, at *1 (2d Cir. Jan. 3, 2023) (summary order). Often, separate verdicts and judgments are necessary pursuant to Rule 42(a) because the consolidation "is never so

complete . . . as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately." *Hall v. Hall*, 584 U.S. 59, 76 (2018) (citing 3 J. Moore & J. Friedman, Moore's Federal Practice § 42.01, pp. 3050–3051 (1938)).

**B. Motion to Appoint Lead Plaintiff and Lead Counsel**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)–(3)(B)(i). First, a plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of (1) the pendency of the action, (2) the claims asserted therein, (3) the purported class period, and (4) the right to move the court to be appointed as lead plaintiff within 60 days of the publication of the notice. *See id.* § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id.* § 78u-4(a)(3)(A)–(B).

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that (1) either filed the complaint or moved to be appointed as lead plaintiff, (2) has the largest financial interest in the action, and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. *See id.* § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). Of these, the second prong, financial interest, is generally considered the "pivotal factor under the PLSRA." *Reimer v. Ambac Financial Group, Inc.*, Nos. 8 Civ. 411 (NRB), 8 Civ. 1273 (NRB), 8 Civ. 1825 (NRB), 8 Civ. 1918 (NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008). At the lead plaintiff stage of litigation, in contrast to the class certification stage, satisfaction of the third prong requires only that the movant "make a preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23." *Clark v. Barrick Gold Corp.*, Nos. 13 Civ. 3851 (RPP), 13 Civ. 4123 (RPP), 13 Civ. 5437 (RPP), 2013 WL 5300698, at *2 (S.D.N.Y. Sept. 20, 2013)

(quoting *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010)); *see Brownbridge v. TFI International Inc.*, No. 25 Civ. 2159 (ER), 2025 WL 2476314, at *3 (S.D.N.Y. Aug. 28, 2025) (collecting cases).

"Typicality is satisfied when each class member's claim arises from the same course of events, . . . each class member makes similar legal arguments to prove the defendant's liability . . . [and] the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *In re MF Global Holdings Ltd. Investment Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015) (internal quotations and citations omitted).

For a lead plaintiff to satisfy the adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy." *Kehoe v. 3D Systems Corp.*, Nos. 21 Civ. 1920 (NGG) (TAM), 21 Civ. 2383 (NGG) (TAM), 2021 WL 5408923, *5 (E.D.N.Y. July 13, 2021).

Once a prospective lead plaintiff has discharged the initial burden, a party may rebut it *only* by providing "proof" that the prospective lead plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses not applicable to other class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb). "Conclusory assertions and mere speculation will not suffice." *Lemm v. New York Community Bancorp, Inc.*, 733 F. Supp. 3d 107, 116 (E.D.N.Y. 2024) (internal quotations and citations omitted), *reconsideration denied*, No. 24 Civ. 903 (NRM) (JRC), 2025 WL 964091, at *5 (E.D.N.Y. Mar. 31, 2025). However, "because the PSLRA requires proof that the movant is merely 'subject to' unique defenses, 'many courts have rejected appointments of lead plaintiffs based on *potential* risks.'" *In re Hebron Technology Co., Ltd. Securities Litig.*, Nos. 20 Civ. 4420 (PAE), 20 Civ. 4746 (PAE), 2020 WL 5548856,

at *7 (S.D.N.Y. Sept. 16, 2020) (citations omitted). "Thus, before disqualifying a potential lead plaintiff on the basis that he is subject to a unique defense, the Court need not conclude that the defense is likely to or will succeed" but instead "must only find at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses." *Id.* (internal quotations and citations omitted). This is to ensure that the unique defenses, even those ultimately unsuccessful, do not "divert attention from the substance of the basic claim." *Id.* (internal quotations and citations omitted).

Regarding lead counsel, the PLSRA requires that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts defer to a plaintiff's selection of counsel "and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Xiangdong Chen v. X Financial*, No. 19 Civ. 6908 (KAM) (SJB), 2020 WL 2478643, at *5 (E.D.N.Y. May 13, 2020) (internal quotations and citations omitted).

## III. DISCUSSION

### A. Motion to Consolidate

Quantum argues that consolidation is appropriate because both Actions arise from the same facts and present similar legal issues, and are filed in the same district and pending in front of the same judge.[5] Durkacz Doc. 33 at 15–16. Quantum states that both cases include allegations that Defendants engaged in a manipulative "spoofing" scheme around the same time frame in violation of the same laws against some of the same defendants, and require the same theory of recovery. *Id.* Quantum states that if the cases were consolidated, it would continue to advocate for the consolidated class, and consolidating would not prejudice Defendants, because they could still raise pleading arguments regardless of consolidation. Durkacz Doc. 39 at 15–16.

---

[5] Durkacz has not moved or otherwise submitted briefings regarding consolidation or appointment of a lead plaintiff. *See* the docket for the Durkacz Action.

Defendants argue that consolidation is not appropriate because it would burden the parties and prejudice them. Durkacz Doc. 37 at 10–12. Defendants state that Quantum is attempting to subvert procedural requirements by abandoning the Quantum Action—because it has a fully-briefed motion to dismiss against it[6]—and to start fresh in the Durkacz Action. *Id.* at 10–11. Defendants argue that consolidation is inequitable, as it would require them to expend additional resources to litigate the Durkacz Action, which is at an earlier stage of litigation; would confuse the issues, as Quantum, as an issuer, is differently situated than other class members; and would delay rather than expedite the cases. *Id.* at 11–12 (citing *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 137 (S.D.N.Y. 2016)).

Consolidation is merited here. The Durkacz and Quantum Actions contain many common questions of law and fact, as the complaints include near-identical allegations about Defendants' actions from 2021 through 2024.[7] *Compare* Durkacz ¶¶ 1, 122, *with* Quantum ¶ 1.

Both complaints recite similar or identical statements about Defendants' alleged spoofing scheme by which they placed baiting orders and entered purchase orders but then rapidly completed the purchase orders and canceled all remaining baiting orders. *Compare* Durkacz ¶¶ 62, 64, *with* Quantum ¶¶ 55–56.

Both complaints also plead the same three claims—violations of Sections 9 and 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5—against at least two of the same defendants. *Compare* Durkacz ¶¶ 9, 11, 17, *with*

---

[6] As noted, the motion to dismiss has since been granted in part and denied in part. Quantum Doc. 46.

[7] Defendants allege that Quantum's statement that they are "prepared to for[]go" the claims between January 1, 2020 and January 5, 2021 should the Court deem the relevant time period an obstacle to consolidation is proof of its desire to start fresh with the Durkacz Action. Durkacz Doc. 37 at 10. Quantum states that "its decision to forego claims that predate the [Durkacz] Class Period reduces its own potential recovery in order to advance the Class's interests." Durkacz Doc. 39 at 16. No decision on the class periods for either action is rendered here, because as stated below, the claims will proceed in a consolidated fashion, but they will retain their "independent character." *Abbott Laboratories*, 2023 WL 19076, at *1.

Quantum ¶¶ 6, 8, 10. Accordingly, "[t]he two cases involve sufficiently overlapping questions of law and fact to justify consolidation." *Faig v. Bioscrip, Inc.*, Nos. 13 Civ. 6922 (AJN), 13 Civ. 8175 (NRB), 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013).

There are differences between the Durkacz and Quantum Actions, but they do not sway the Court's determination that consolidation is appropriate. The Durkacz Class Period runs from January 6, 2021 to October 15, 2025, Durkacz ¶ 122, which is later than the Quantum Relevant Period, which runs from January 1, 2020 to August 15, 2024, Quantum ¶ 1. The Durkacz Action alleges that Quantum sold more shares. *Compare* Durkacz Doc. 33 at 11 (16 million shares), *with* Quantum ¶ 208 (90 million shares). The Durkacz Action alleges a violation of Section 20(a) of the Exchange Act, Durkacz ¶ 17, but the Quantum Action does not, *see* Quantum ¶ 6. The Durkacz Action also includes four more Defendants by name: CIBC USA, RBC Capital Markets, and the Control Person Defendants. Durkacz ¶¶ 10, 12, 14–15. The Quantum Action has already partially survived a motion to dismiss, Quantum Doc. 46, but no motion to dismiss has been filed in the Durkacz Action.

These differences do not mitigate the benefits of consolidation. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."), *on reconsideration in part sub nom. In re IMAX Securities Litig.*, No. 6 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *see also, e.g.*, *In re CMED Securities Litig.*, No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at *2 (finding a "slight difference" in class period, where the allegations were near-identical, did not preclude consolidation).

As for Defendants' argument that the different procedural postures of the Actions will prejudice them, Durkacz Doc. 37 at 11, no party will be able to enjoy any additional—or any fewer—rights after consolidation. *See In re Patriot National, Inc.*

*Securities Litig.*, No. 17 Civ. 1866 (ER), 2021 WL 3418615, at *9 (S.D.N.Y. Aug. 5, 2021) (holding that consolidation cannot alter substantive rights, and will leave parties in the same position as before). Nor will consolidation deprive Defendants of the benefits of the partial dismissal of the Quantum Action. *See Hall*, 584 U.S. at 76; Quantum Doc. 46 at 41. The Quantum Action and the Durkacz Action will proceed in a consolidated fashion, but the cases will retain their independent characters. *See Abbott Laboratories*, 2023 WL 19076, at *1; *Hom*, 2016 WL 880201, at *2.

**B. Motion to Appoint Lead Plaintiff**

Quantum's motion for appointment as lead plaintiff is denied. Quantum makes a *prima facie* showing that it moved for appointment and has the largest financial interest, but it does not satisfy the typicality or adequacy requirement of Rule 23.

Significant to this inquiry is Quantum's position as issuer of the stock central to the two Actions. "The PSLRA does not explicitly address issuers seeking to represent their own shareholders in class action lawsuits." *Genius Group Ltd. v. Citadel Securities LLC*, No. 25 Civ. 9546 (VEC), 2026 WL 1760342, at *3 (S.D.N.Y. June 18, 2026). Quantum cites no cases in which an issuer was approved to serve as lead plaintiff for a class of its own shareholders. *See id.* (finding the issuer similarly cited no cases in support). Despite Quantum's unique position, it is appropriate for the Court to evaluate the motion by reference to subsections 78u-4(a)(3)(A)(i) and 78u-4(a)(3)(B)(iii)(I)(aa)–(cc) of the PSLRA, and the attendant requirements of typicality and adequacy pursuant to Rule 23. *See id.* (applying the "usual tests" for typicality and adequacy to determine whether an issuer was fit to serve as lead plaintiff).

*1. Timeliness*

Quantum has satisfied the first requirement of the PSLRA by timely filing the instant motion on February 23, 2026 in response to Durkacz' notice in *Business Wire* on December 23, 2025. *See* Durkacz Doc. 32; Durkacz Doc. 33-4 at 2. No other plaintiff has moved to be appointed lead plaintiff.

*2. Financial Interest*

Quantum argues that because it sold or disposed of over 16 million shares through at-the-market offerings, profiting over $47 million during the Durkacz Class Period, it is the plaintiff with the largest financial interest. Durkacz Doc. 33 at 11. No other party has alleged that another plaintiff holds a larger financial interest, and Defendants do not contest Quantum's financial interest. *See* Durkacz Doc. 37 at 14. Thus, the Court finds that Quantum has the largest financial interest in the case for purposes of its application for lead plaintiff.

*3. Rule 23*

Quantum fails to make a *prima facie* showing of typicality, and Defendants successfully rebut any showing of adequacy with proof of unique defenses Quantum may face as lead plaintiff. The facts and circumstances that support this conclusion are similar to those in *Genius*. In *Genius*, the company Genius brought suit alleging that the broker-dealer defendants artificially depressed the market price of its stock by engaging in a spoofing scheme. *See Genius*, 2026 WL 1760342, at *1. Genius, the issuer of the stock, was the only movant for lead plaintiff, and the court found it to be the movant with the largest financial interest. *Id.* at *3. However, the court found that Genius did not satisfy the typicality requirement because its transactions made off-the-market were numerous and "fundamentally different" from other class members' transactions. *Id.* Further, without discussing the merits of the dispute, the court found that Genius did not satisfy the adequacy requirement because it would "be subject to unique defenses given the unique information to which it had access as the issuer, leaving it as an inappropriate [l]ead [p]laintiff." *Id.* at *4.

*a. Typicality*

Quantum argues that it satisfies the typicality requirement because its claim and that of other putative class members arise from the same course of events related to Defendants' alleged spoofing scheme and because the putative class members—including

Quantum—will face the central issue of whether the alleged spoofing scheme violated the law and artificially depressed the price of the Quantum stock. Durkacz Doc. 33 at 12.

Defendants argue that Quantum is not typical because its role as the issuer meant that it had access to non-public information and engaged in atypical transactions, including transactions with contractually-set prices. Durkacz Doc. 37 at 19–20; Durkacz Doc. 42 at 1–2. Defendants further point to *Genius* to demonstrate how an issuer's disposal of shares, especially sales at prices off-the-market, is different from the sale of shares by other class members. Durkacz Doc. 42 at 1; *Genius*, 2026 WL 1760342, at *3.

In opposition, Quantum states that unlike in *Genius*, "every transaction identified in Quantum's PSLRA certification—and thus every transaction on which Quantum relies for purposes of appointment as lead plaintiff—was an at-the-market sale executed into the public market." Durkacz Doc. 43 at 1; *see* Durkacz Doc. 33-2 at 4–5.

While Quantum made sales that were indistinguishable from the sales of other putative class members—indeed, the Court has already found that Quantum plausibly alleged loss causation by identifying sales made at prices which Defendants allegedly influenced, Quantum Doc. 46 at 37–38—just as in *Genius*, Quantum engaged in a significant number of sales fundamentally different from the sales of the other putative class members. *See Genius*, 2026 WL 1760342, at *3; Durkacz Doc. 42 at 2 (alleging that Quantum issued warrants at fixed prices and established share option plans for directors, officers, and employees); Durkacz ¶ 208 (alleging that Quantum issued 90 million shares of its own stock). Quantum, as issuer of the stock in question, does not satisfy the typicality requirement and thus cannot be lead plaintiff because of its fundamentally different sales from those of other putative class members.

*b. Adequacy*

Quantum also does not satisfy the adequacy requirement. Quantum argues that it has no conflict with other putative class members because it has an interest in protecting its own shareholders and the integrity of its securities. Durkacz Doc. 33 at 13. It states

that given its publicly-traded status, it is sufficiently sophisticated to oversee the litigation, and acted diligently to investigate the alleged wrongdoing. *Id.* Just as was found in *Genius*, there is no doubt of Quantum's interest and commitment to the integrity of its securities and the protection of its shareholders. *Genius*, 2026 WL 1760342, at *4 (finding Genius "would be a vigorous advocate on behalf of itself and the [c]lass"). However, Defendants provide proof that Quantum is subject to unique defenses which distract from the primary issues relative to other putative class members. Durkacz Doc. 37 at 14; *see Genius*, 2026 WL 1760342, at *4 (finding that the issuer's "appointment risks injecting unique defenses and conflicts that distract from issues common to the [c]lass"). Defendants argue that Quantum is subject to unique defenses related to (1) mismanagement; (2) a statute of limitations, and reliance, and (3) *forum non conveniens* and jurisdictional challenges. Durkacz Doc. 37 at 9.

i. Misconduct Defenses

Defendants allege that Quantum committed misconduct involving losses, changing business ventures, litigation, proxy battles, issuance of shares, and even mismanagement of the investigation of Defendants' trading activities, which negatively impacted Quantum's share price and thus subjects Quantum to a unique defense. *Id.* at 15–16. Quantum states that Defendants offer no evidence of wrongdoing and instead characterize ordinary business challenges as mismanagement. Durkacz Doc. 39 at 9–10.

Allegations that Quantum's actions influenced its stock price are not proof of vulnerability to a unique defense that rebuts a showing of adequacy. *See Genius*, 2026 WL 1760342, at *4 (finding that stock price movement can have multiple causes and is not a basis for denying a motion for lead plaintiff). Further, Defendants fail to allege that Quantum engaged in serious misconduct that would distract from the primary issues. *See* Durkacz Doc. 37 at 15–16. *Compare Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (finding a decade-old allegation unconnected to the case insufficient grounds to find a potential lead

plaintiff inadequate), *with Faris v. Longtop Financial Technologies Ltd.*, No. 11 Civ. 3658 (SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (finding lack of adequacy where a potential lead plaintiff was sued for its involvement in a Ponzi scheme).

ii. Statute of Limitations Defense and Reliance Defense

Defendants allege that Quantum is subject to a statute of limitations defense because it was on inquiry notice of its claims in 2021 but waited until 2024 to bring the suit. Durkacz Doc. 37 at 17. Similarly, Defendants allege that Quantum is subject to a unique defense related to its reliance interests because Quantum decided to trade despite believing its stock was manipulated. *Id.* at 18–19.

Quantum argues that Defendants identify no proof of when Quantum's investigation triggered the statute of limitations, or what the investigation found, and that the Court has already considered and rejected the argument that Quantum's claims are time-barred. Durkacz Doc. 39 at 10–11; Durkacz Doc. 43 at 2 (citing Quantum Doc. 46 at 38–40). Quantum also argues that reliance is not properly raised until the class certification stage, and that Defendants offer no evidence that Quantum believed the suspected manipulation would continue or otherwise knew the market was manipulated. Durkacz Doc. 39 at 13.

Defendants' argument as to when the statute of limitations was triggered is unpersuasive, and their lack of proof stands in contrast to the proof raised in *Genius* regarding the same issue. *Genius*, 2026 WL 1760342, at *4. In *Genius*, the court found that the "timeliness of the claims . . . pose[d] a problem" where the company made a public announcement that it had "proof" of the defendants' misconduct in January 2023 but did not file suit until over two years later. *Id.* The *Genius* court found, without deciding whether the defenses were meritorious, that the very inquiry demonstrated a likelihood that the potential plaintiff would "be subject to unique defenses given the unique information to which it had access as the issuer, leaving it as an inappropriate [l]ead [p]laintiff." *Id.* Here, in contrast, Defendants point to Quantum's investigation

generally, and state that the discovery of supposed misconduct could have happened "as early as 2021," but do not offer any proof that the investigation actually uncovered misconduct that would have triggered action at an earlier time. Durkacz Doc. 37 at 17. However, with respect to Defendants' more general point that Quantum could be subject to a unique reliance defense based on its access to inside information as the issuer of the stock, *id.* at 18, the argument is sufficient to rebut any preliminary showing of adequacy. The very nature of Quantum's status as issuer raises a question as to the information it possessed. While Defendants do not prove this unique defense at this stage—they don't need to—they raise it as sufficient proof that the defense is "the exact type of distraction . . . that having [Quantum] as [l]ead [p]laintiff risks." *Genius*, 2026 WL 1760342, at *4.

iii. *Forum Non Conveniens* and Jurisdictional Defenses

Defendants allege that Quantum is subject to unique *forum non conveniens* and jurisdictional defenses because it is Canadian. Durkacz Doc. 37 at 18. Quantum argues that because the class alleges violations of U.S. securities laws, and because foreign investors are regularly appointed lead plaintiffs, especially where the securities at issue were purchased on U.S. exchanges, these are not defenses to which it will be subject. Durkacz Doc. 39 at 12. Furthermore, Quantum argues that any Canadian class member would face these challenges. *Id.*

Given the possibility that other putative class members will face these defenses, they are not unique to Quantum. Thus, this argument fails to raise proof that Quantum will be subject to the defenses.

*4. Other Appropriate Lead Plaintiff*

Defendants ask the Court to decline to reopen the lead plaintiff application process. Durkacz Doc. 42 at 3. As Quantum is not the most adequate plaintiff, the Court evaluates the only other party at this stage who fulfills the requirements set forth by the PSLRA: Durkacz. See Durkacz Doc. 43 at 3. Durkacz is the only other party who has

either filed the complaint or moved to be appointed as lead plaintiff, § 78u-4(a)(3)(B)(iii)(I), as he filed the Action on December 19, 2025. Durkacz Doc. 1. Other than Quantum—which was already found to have a large financial interest, *supra*—Durkacz is the only one who is alleged to have a significant financial interest. *See* § 78u-4(a)(3)(B)(iii)(I); Durkacz ¶ 8. He is both typical and adequate pursuant to Rule 23 as his claim arises from the same course of events as other class members, he will make similar legal arguments as other class members, the same issues of law and fact occupy the same degree of centrality of his claims and those of other class members, and the Court is aware of no conflict between his interests and those of the other class members.[8] *See* Durkacz Doc. 43 at 3; Durkacz ¶ 8. As such, the Court appoints Durkacz as lead plaintiff.

**C. Motion to Appoint Lead Counsel**

The Court finds that Durkacz' chosen counsel, Grant & Eisenhofer P.A., has substantial experience in securities class action litigation and has served as lead counsel in many cases alleging violations of the securities laws, including *In re Pfizer Inc. Securities Litig.*, No. 4-cv-9866 (S.D.N.Y.); *In re Global Crossing, Ltd. Securities Litig.*, No. 2-cv-910 (S.D.N.Y.); *In re Refco, Inc., Securities Litig.*, No. 5-cv-8626 (S.D.N.Y.); *In re Marsh & McLennan Cos. Securities Litig.*, MDL No. 1744 (S.D.N.Y.); and *In re Oxford Health Plans, Inc., Securities Litig.*, MDL No. 1222 (S.D.N.Y.). *See* Durkacz Doc. 33 at 14–15. Accordingly, the Court appoints Grant & Eisenhofer P.A. as lead counsel.

## IV. CONCLUSION

For the aforementioned reasons, the motion to consolidate is GRANTED. All future filings in this case shall be filed in the 25 Civ. 10565 case and bear the same caption as that case number, absent order of the Court. The Clerk of the Court is respectfully directed to close the 24 Civ. 7972 case and terminate any pending motions in

---

[8] Defendants note that Durkacz "appears to be a relative of Quantum's founder and Board co-chairman Anthony Durkacz" but do not allege a conflict of interest. Durkacz Doc. 37 at 7.

that case. Quantum's motion for appointment as lead plaintiff is DENIED, and Paul J. Durkacz is appointed as lead plaintiff. Approval of lead counsel is GRANTED in part. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 32 in the 25 Civ. 10565 case.

It is SO ORDERED.

Dated: September 29, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.